GIBBONS *v.* LONGINO & REID.[*]

(Division A.   April 8, 1929.)

[121 So. 490.   No. 27827.]

---

*Corpus Juris-Cyc References: Bills and Notes, 8CJ, section 600, p. 405, n. 69; section 603, p. 408, n. 93; section 1011, p. 730, n. 93; section 1358, p. 1046, n. 9; p. 1047, n. 10; As to what is reasonable time for presentation of note payable on demand, within meaning of Negotiable Instrument Law; see 3 R. C. L. 1048; 1 R. C. L. Supp. 960; 7 R. C. L. Supp. 112.

W. S. Welch, Ellis B. Cooper, Roy P. Noble and Jas. T. Welch, for appellant.

C. E. Johnson, for appellee.

McGowen, J. Gibbons, the appellant, brought suit in the justice of the peace court of W. J. Massengale against Longino & Reid on three promissory notes in the sum of fifty dollars each, dated February 26, 1925, signed by Longino & Reid, a firm composed of A. C. Longino and Sam B. Reid. In the justice court there was a judgment for the appellees and appellant prosecuted an appeal to the circuit court. The case was transferred to the county court, and tried before the county judge, who reversed the judgment for the appellees. The case was then appealed to the circuit court, where the judgment of the county court was affirmed, and from that judgment, this appeal is prosecuted.

The three notes sued on are identical except as to the dates of maturity, they being due on April 26, June 26, and August 26, 1925, respectively. They bear interest at the rate of eight per cent per annum and provide for the payment of a reasonable attorney's fee. These notes are payable to J. A. Boyd, and are indorsed on the back by him.

As this case originated in the justice of the peace court, there were no written pleadings required; but we gather from the record that the appellees interposed a defense

to the notes, of a failure of consideration and material alteration.

It is not disputed in this record that the maturity dates were written in the notes after they were signed and delivered to Boyd. The body of the notes was printed, and a blank space left for the interest rate, and that this blank space was filled in after execution and delivery, by inserting the figure eight in the space, is not disputed. Also, there was printed in the body of the notes a provision for ten per cent attorney's fees. The figures ten were erased, and the word "reasonable" substituted, written above, apparently in the same handwriting as the maturity dates of the notes. The notes also provide for a lien on a safe.

The evidence to the effect that these notes were altered after delivery by the appellees in the particulars above stated is undisputed. Gibbons, the holder of the note, who brought the suit, testified that the notes as exhibited to the court were as he received them. When asked whether or not the indorsement of Boyd on the backs of the notes appeared to be in fresh ink, he said it seemed to be. Both of the appellees testified that they gave the notes for a safe which was never delivered.

The appellant testified that he paid value for the notes, without any knowledge of the infirmity existing therein, on February 28, 1926, two days after their execution on February 26th.

The court below evidently must have entertained the view that the handwriting of Boyd the transferor, on the backs of the notes, was not executed before maturity; for that is the only conceivable way in which the court could have reached the conclusion that the appellees were not liable on the notes.

The supplying of a due date on the notes, insertion of a rate of interest, and the changing of the attorney's fee from ten per cent to "reasonable"—none of these are such alterations on the face of the notes as would indi-

cate infirmity therein. It is not unusual for notes to have a due date, to bear interest, and provide for the payment of an attorney's fee, either "reasonable" or on a percentum basis.

The decision of this case depends upon the application of various sections of what is known as the Negotiable Instruments Act (chapter 244, Laws of 1916; Hemingway's Code of 1927, chapter 5).

The appellees seem to contend here that Gibbons was not a holder for value, because they say that the difference in the color of the ink, and the fact that it seemed to be fresh, was found by the lower court to be sufficient evidence that the notes were not indorsed by Boyd before the maturity thereof, and cite section 2803, Hemingway's Code of 1927, as to the effect of a transfer of a negotiable instrument without indorsement, which reads as follows:

"Where the holder of an instrument payable to his order transfers it for value without endorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the endorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the endorsement is actually made." Section 2806, Hemingway's Code of 1927, sets forth what constitutes a holder for value, to the effect that it must be complete and regular upon its face; that he became the holder before it was overdue, without notice of its dishonor; that he took it in good faith for value; and that he had no notice of any infirmity in the instrument.

We think if the court adopted the theory that Gibbons was not a holder in due course because the fresh ink referred to overcame the positive testimony of Gibbons, the presumption being that the indorsement did not take place when the notes were paid for and delivered, that its position is unsound; in fact, the fresh ink raises a

mere suspicion in the mind of the court, and cannot overcome the positive presumption and the positive testimony, which is undisputed. Therefore, so far as the transfer is concerned, and the requirements as to holder for value in due course, we must say that, if the lower court found, as a matter of fact, that the note was not transferred at the time of the transaction, this was error.

A holder in due course of an instrument which has been materially altered is entitled to recover according to its original tenor. Section 2878, Hemingway's Code of 1927. There is no doubt as to the original tenor of the note. With no maturity date it becomes a demand note. Having been negotiated within a reasonable time, two days after the date of their execution, the holder thereof in due course in good faith is regarded as having acquired them before they became overdue. See *Wilson* v. *Stark,* 146 Miss. 498, 112 So. 390, in which case it is held that, on a demand note negotiated within a reasonable time the holder thereof takes as a purchaser before maturity without any notice of the defect.

Section 2810, Hemingway's Code of 1927, is as follows: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The notes themselves, the evidence of Gibbons, and the entire record, impute no bad faith to Gibbons. Also see section 2878, Hemingway's Code of 1927, in which it is said that, when an instrument has been materially altered, and is in the hands of a holder in due course not a party to the alteration, he may enforce payment according to its original tenor.

It is also true that, by virtue of section 2799, Hemingway's Code of 1927, the indorsement on this note is pre-

sumed to have been effected before the instrument was overdue. We quote as follows: *"Time of Indorsement— Presumption.*—Except where an endorsement bears date after the maturity of the instrument, every negotiation is deemed *prima facie* to have been effected before the instrument was overdue."

The positive testimony of the appellant, together with this presumption, cannot be overcome by the appearance of the ink indorsement on the back of a note.

It appears that the alteration of the attorney's fee for collection from "ten per cent" to "reasonable" must be disregarded, and the note enforced according to its original tenor; that is appellant will be entitled to recover the amount of his note, with interest at six per cent and a ten per cent attorney's fee.

*Reversed and remanded.*